## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CARLIE CHIRINIAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE TRAVELERS COMPANIES, INC. and THE TRAVELERS ADMINISTRATIVE COMMITTEE<br><br>Defendants. | **Civil Action No.: 0:24-cv-3956**<br><br><br><br><br><br>**COMPLAINT – CLASS ACTION** |

Plaintiff Carlie Chirinian ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against The Travelers Companies, Inc. and the Travelers Administrative Committee (collectively, "Travelers" or "Defendants") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.      It is both unfair and unlawful for entities like Travelers to impose punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for their health insurance. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") and its anti-

discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

2.      Tobacco surcharges have become more prevalent in recent years, but to be lawful, they must adhere to specific rules set forth by ERISA and related regulations. These rules mandate that employers cannot charge extra fees based on tobacco use unless those fees are part of a compliant wellness program that offers a reasonable alternative standard to all participants. While ERISA allows for wellness programs that incentivize healthy behavior, these programs must meet strict criteria.

3.      First, wellness programs must genuinely promote health, not merely serve as a revenue generator. Second, the program must provide a "reasonable alternative standard" to individuals for whom it is difficult to meet the initial health requirement, such as quitting tobacco use. This reasonable alternative could include participation in a smoking cessation program, through which participants can avoid the tobacco surcharge for the entire plan year. Most importantly, employers must clearly communicate the availability of this alternative standard in all relevant plan materials.

4.      Notwithstanding, the Travelers Trusteed Employee Benefit Plan (the "Plan") imposes an unlawful tobacco surcharge on participants, which fails to offer the requisite reasonable alternative standard as mandated by law. While the Plan allows participants to qualify for a non-smoker discount through tobacco cessation programs, it imposes stringent requirements, including deadlines for enrolling and completing the program. The Plan also fails to clearly communicate these options and requirements to employees in a timely and transparent manner. Further, the Plan neglects to adequately inform employees that they

may qualify for an alternative standard if it is unreasonably difficult or medically inadvisable to meet the cessation program requirements, and it fails to notify participants that the recommendations of their personal physician will be accommodated. This failure to communicate is common across all Plan communications. As a result, Defendants' wellness penalty for tobacco use is in violation of ERISA's anti-discrimination provisions. It imposes additional costs on employees who use tobacco products without satisfying the legal criteria for a bona fide wellness program.

5.     Plaintiff Chirinian was an employee of Travelers until August 2024, and was required to pay the tobacco surcharge to maintain health insurance coverage under the Plan in 2024. The surcharge has imposed an additional financial burden on her and other similarly situated employees, despite Traveler's failure to comply with the legal requirements for wellness programs under ERISA.

6.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Travelers from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. § 1109, Travelers, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff also seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

7.     Plaintiff Carlie Chirinian is, and at all times mentioned herein was, an individual citizen of the State of Colorado residing in the County of Arapahoe. Ms. Chirinian was an employee of Travelers until earlier this year who was paying smoker rates for health insurance offered through her employer during the applicable limitations period.

8.     Plaintiff Chirinian is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

9.     Travelers is a publicly traded insurance company incorporated in Minnesota, with its principal place of business in New York City, New York. Travelers provides a broad range of insurance products and services across multiple sectors, including personal, commercial, and specialty lines, and operates throughout the U.S. and internationally.

10.     The Travelers Administration Committee ("TAC") is the committee that has fiduciary responsibility for the administration and operation of the Plan. The TAC is a named Administrator and fiduciary of the Plan.

11.     At all times relevant to this lawsuit, Defendants sponsored, maintained, and managed the Plan. Recently filed public documents show the Plan has over 30,000 active participants as of December 31, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has

subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant Travelers because it is incorporated in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to its activities and conduct concerning Plaintiff and the Class in the State of Minnesota.

14.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which Defendant Travelers is incorporated. Additionally, Defendants conduct business and can be found in this District.

## FACTUAL BACKGROUND

## I.     DEFENDANTS' WELLNESS PENALTY FOR TOBACCO USE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

15.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1).

16.     Defendants' wellness penalty for tobacco use violates this provision. Plaintiff and all others similarly situated were penalized by failing to qualify for a wellness incentive based on a "heath status-related factor" — their use of tobacco products. Plaintiff, and all others similarly situated, were forced to pay the wellness penalty for tobacco use.

17.     Specifically, Defendants withhold a wellness incentive from employees and their spouses/domestic partners who are enrolled in the Plan and have used tobacco products within the last 6 months or intend to use tobacco products in the future. Defendants require employees to indicate their own tobacco usage as well as that of their enrolled spouses or domestic partners during enrollment in the Benefits System. Participants must affirm their non-smoker status, otherwise they will be covered as a smoker. Tobacco products subject to the surcharge include e-cigarettes, cigarettes, cigars, and smokeless tobacco. Under the Plan, the exact amount of the Wellness Incentive that are being denied to participants with smoker status is unknown at this time.

18.     During this period, Defendants controlled the Wellness Incentive and the designation of participants as smokers, including determining which participants qualified for the Wellness Incentive by withholding the incentive from those participants' paycheck.

19.     The Plan offered by Defendants withholds from certain participants a reward that is available to non-smoker participants based on their use of tobacco and fails to meet the safe harbor exception in violation of ERISA.

## II.    DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS

20.    Defendants failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, being tobacco-free. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the full reward once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year.

21.    ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B). This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

22.    A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding

what "reasonable" health-contingent programs must include. To qualify under ERISA, there are three basic requirements: <u>First</u>, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; <u>second</u>, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; <u>third</u>, the program must be disclosed "in **all** plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

23.     Defendants' Wellness Incentive did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

24.     While Travelers offers tobacco cessation programs as part of its wellness incentive, the 2024 Summary Plan Description ("SPD") does not sufficiently explain the process by which all participants can avoid or remove the surcharge. Under the plan, smokers must not only enroll in an approved tobacco cessation program by March 31 but also complete the program by December 15 of the same plan year. If a participant fails to enroll in the program by March 31, they are unable to qualify for non-smoker rates for the entire year. This narrow temporal window imposes unnecessary administrative burdens that make it needlessly difficult for employees and their spouses/domestic partners to navigate. These requirements not only render the alternative program unreasonably difficult to complete but also preclude those smokers who fail to enroll in a program before

March 31 or complete the program before December 15 from obtaining the wellness incentive. Further, the Plan charges participants smoker rates based on their spouse or domestic partner's smoking status. As the 2024 SPD states:

> You may be eligible for a non-smoker discount under the medical plan. To be eligible, you must not have used tobacco products during the previous six (6) months and you must not intend to use tobacco products in the future …
>
> If you are a smoker you will be charged smoker rates. If your spouse or domestic partner is a smoker, and you elect coverage for him or her under the medical plan, you will be charged smoker rates. If you add your spouse or domestic partner to your medical coverage and he or she is a smoker, you will be charged smoker rates effective on the date you add him or her to your medical coverage.
>
> If you or your spouse or domestic partner change from smoker to non-smoker status, each of you must complete an affidavit before the change can be implemented.
>
> Upon your initial enrollment in the plan and every year during annual enrollment, you must affirm the smoker status of you and your spouse or domestic partner. If you fail to affirm smoker status, you will be covered as a smoker.[1]

25.    While the Plan offers to refund the difference in the event smoking participants complete the program, the refund of smoker premiums paid is contingent on completing the cessation program early in the plan year, with documentation due by December 15. Failure to meet these arbitrary deadlines results in forfeiture of any refund, which fails to satisfy the "reasonable alternative" requirement that must genuinely improve affordability. As the SPD states:

> If you and/or your spouse or domestic partner is a smoker, you may still receive the non-smoker discount if you complete the

---

[1] 2024 SPD at 17.

approved UHC, Anthem or Surest tobacco cessation program, and provide a completed Reasonable Alternative Certification Form to the ESU. You must enroll in the UHC, Anthem or Surest tobacco cessation program by March 31st of the plan year and you must successfully complete the program by December 15th of the plan year. You must complete and submit the Reasonable Alternative Certification Form to the ESU within 31 days of completing the program (but in no case later than December 15th). After the ESU confirms program completion with the vendor, you will be charged non-smoker medical rates for the remainder of the plan year. Keep in mind that your spouse or domestic partner must be a non-smoker as well, or must also start an approved vendor tobacco cessation program by March 31st, complete the program by December 15th and submit the Reasonable Alternative Certification Form by the deadline for you to receive non-smoker medical rates.

You will also receive a refund of the difference in cost between the smoker and non-smoker premiums that you paid retroactive to January 1. This refund is taxable income to you. Refunds must be processed in the same plan year. For that reason, if you complete an approved tobacco cessation program in November or December, you must submit all documentation to the ESU by December 15th to be eligible for a premium refund. You may not receive a premium refund for documentation submitted after December 15th.

*If you enroll in the smoking cessation program after March 31st of the plan year, you will only be eligible for non-smoker premiums on a prospective basis for the remainder of the plan year*. *Id* (emphasis added).

26.    The Plan creates an unfair and discriminatory process by only allowing participants who enroll in the program before March 31 and complete the program and submit documentation by December 15 to qualify for the incentive for the entire year. Participants who fail to meet these requisites cannot qualify for the wellness incentive for the entire year. This violates ERISA's requirement that participants receive the "*full*

*reward*" upon satisfying the alternative standard, as it unfairly denies retroactive relief to participants who complete the program.

27. Defendants, during the applicable limitations period, maintained exclusive control over the wellness incentive and participants' smoking status, including determinations as to which participants were and continue to be required to smoker rates for coverage. Defendants withheld the amount of the wellness incentive from participants' paychecks, including Plaintiff's, and contributed these amounts to a trust. Defendants have a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendants has reduced the amount that it has to contribute to the trust, which has allowed it to realize monies it would not have otherwise realized if it had not imposed these smoker rates on participants.

28. ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. Defendants' plan documents fail to adequately communicate this option, instead providing incomplete or misleading notice. Specifically, the documents inform participants that participating in a smoking cessation program can ensure they qualify for the wellness incentive, but that only applies to certain participants (i.e., those who enroll before March 31 and provide documentation before December 15). This failure to clearly disclose the availability of a full reward upon satisfying an alternative standard for *all* participants violates ERISA's notification requirements and misleads participants regarding their rights under the Plan.

29.     Because the Plan fails to provide a compliant reasonable alternative standard that allows all participants to receive the "full reward"— qualifying for the wellness incentive for the entire plan year — Defendants' wellness program fails to provide reasonable alternative standards. In other words, while Defendants offers quit-tobacco programs, only certain employees who meet certain requirements can avoid the surcharge altogether. On these bases, the Plan violates ERISA's anti-discrimination provisions.

## III.    DEFENDANTS FAILED TO NOTIFY PARTICIPANTS OF A REASONABLE ALTERNATIVE STANDARD

30.     To qualify as a compliant wellness program under the regulations, employers must provide notice of the availability of a reasonable alternative standard. The regulations require plans and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E). The regulations make clear that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description, as well as in the applicable governing plan documents (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the

plan." 78 FR 33158, 33166 n. 24. In addition, the applicable regulations require that "[t]he plan or issuer . . . disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v).

31.     Upon information and belief, Defendants do not include adequate notification in **all** Plan materials. While the 2024 SPD document contains references to materials describing the smoking cessation programs and the wellness incentive, it fails to notify participants of the availability of a reasonable alternative standard that would ensure they qualify for the wellness incentive for the entire year, in violation of ERISA. This document does not inform employees of an avenue for all participants to qualify for the wellness incentive for the entire year.

32.     Defendants' failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard.

33.     Further, it does not appear as if Defendants included a statement that the recommendations of an individual's physician will be accommodated, as required. Upon information and belief, none of Defendants' plan materials reference the disclosure regarding a participant's physician's recommendations.

34.     Thus, while there appears to be an alternative means to qualify for the wellness incentive, there is no mention of a reasonable alternative standard to ensure that

*all* participants can qualify for the incentive for the entire year and there is no mention of how the recommendations of participants' physicians will be accommodated. Accordingly, the wellness incentive program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

35.    Defendants, by failing to comply with its obligations to provide and notify participants of the availability of reasonable alternative standards by which Plan participants can qualify for the wellness incentive for the entire year and receive the "full reward," have violated ERISA's anti-discrimination provisions.

## CLASS DEFINITION AND ALLEGATIONS

36.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

37.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Tobacco Use Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who, during the applicable statute of limitations, paid smoker rates that were not fully reimbursed, in connection with their participation in a health or welfare plan offered by Defendants.

38.    Excluded from the Class are Defendants, any parent entities, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

39.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

40.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

41.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains hundreds of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

42.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

      a.    Whether Defendants' wellness penalty for tobacco use discriminates against participants based on a health status related factor;

      b.    Whether the smoking cessation programs constitute a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

      c.    Whether Defendants notified participants in all Plan materials of the avenues by which participants could avoid the wellness penalty for tobacco use and obtain the "full reward";

      d.    Whether Defendants notified participants in ***all*** Plan materials of the reasonable alternative standards by which participants could avoid the wellness penalty for tobacco use for the entire plan year;

      e.    Whether Defendants notified participants in all Plan materials of the fact that their personal physician's recommendations would be accommodated;

      f.    Whether Defendants' wellness penalty for tobacco use violates ERISA and the applicable regulations.

      g.    Whether Defendants breached their fiduciary duties by collecting the premiums based on smoker status; and

h. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its Plan to ensure compliance with ERISA and applicable regulations.

43. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful wellness penalty for tobacco use. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff's are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

44. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed an unfair and discriminatory wellness penalty for tobacco use. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

45. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain

effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

46.    Plaintiff on behalf of herself and the Class seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class. Unless the Class is certified, Defendants will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY WELLNESS PENALTY FOR TOBACCO USE
### (Violation of 29 U.S.C. § 1182)

47.    Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

48.    Defendants improperly impose a wellness penalty for tobacco use on all participants who use tobacco in violation of ERISA § 702. By imposing a discriminatory

wellness penalty for tobacco use on participants (and their dependents) who use tobacco, and by withholding wellness incentives from those participants, Defendants is charging some participants more than others based on a health status-related factor, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b).

49.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory wellness penalty for tobacco use on participants, without offering a compliant wellness program, Defendants discriminates against individuals like Plaintiff who failed to qualify for the non-smoker premium payments.

50.    Defendants' imposition of the tobacco surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702. Further, Defendants' failure to provide a reasonable alternative standard to the smoking cessation program it offers to participants constitutes a failure by Defendants to provide participants with a compliant wellness program. Additionally, only certain participants can avoid the surcharge (i.e., those enrolling on or before March 31 and who submit paperwork before December 15). By failing to provide an avenue for *all* participants like Plaintiff to obtain the "full reward" of the wellness program, Defendants failed to provide a compliant wellness program.

51.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

52.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING WELLNESS PENALTY FOR TOBACCO USE
### (Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)

53.    Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

54.    To enroll in the Defendants' Plan, Plaintiff and all those similarly situated were required to pay smoker rates in an undisclosed amount each pay period and each year.

55.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in

relation to the individual or to an individual enrolled under the plan as a dependent of the individual."

56.     Defendants improperly impose a wellness penalty for tobacco use on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums on participants (and their dependents) who use tobacco, Defendants charges some participants more than others based on a health status-related factor in violation of ERISA § 702(b), 29 U.S.C. § 1182(b).

57.     Applicable regulations provide an exception for wellness programs, provided they comply with the requirements outlined in the regulations. *See* 29 C.F.R. § 2590.702(f). Defendants did not give statutorily required notice of a compliant reasonable alternative standard in that neither the Plan document nor the SPD for the Plan during the applicable limitations period detailed a wellness program whereby all participants could qualify for the wellness incentive for the entire plan year, in violation of the applicable regulations. 29 C.F.R. § 2590.702(f)(3)(E)(v).

58.     Defendants' failure to notify participants of a reasonable alternative standard prevents it from asserting an affirmative defense on that basis under the statutory safe harbor protection.

59.     Defendants' wellness penalty for tobacco use has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor in assessing an unlawful surcharge, in violation of 29 U.S.C. §1182(b).

60.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any

provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

61.     Plaintiff and those similarly situated were prevented from receiving the wellness incentive and were, therefore, paying higher "smoker" premiums for coverage, and Defendants retained those additional funds without having to contribute to additional monies to the Plan's trust.

62.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

63.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

64.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), imposes several fiduciary duties on Plan Administrators, including the duty to act loyally and "solely in the interest of the participants and beneficiaries[,]" the duty to act with "care, skill, prudence, and diligence" — which includes ensuring that benefits paid pursuant to a defined benefit plan conform with ERISA's statutory requirements — and the duty to act "in accordance with the documents and instruments governing the plan *insofar as such documents and*

21

*instruments are consistent with* the provisions of" subchapters I and III of ERISA. 29

U.S.C. § 1104(a)(1) (emphasis added).

65.    Throughout the applicable limitations period, Defendants were the administrators of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that they exercised discretionary authority and discretionary control respecting management of the Plan and the disposition of its assets by holding the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

66.    The TAC breached its fiduciary duties by assessing and collecting the wellness penalty for tobacco use in violation of ERISA and the applicable regulations. To that extent, Defendant TAC breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. The TAC acted disloyally by causing Plaintiff and members of the Class to pay a wellness penalty for tobacco use that was unlawful.

67.    ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the TAC to pay unreasonably low benefits in violation of ERISA, Travelers breached its fiduciary duties to supervise and monitor the TAC.

68.    Defendants collected and deposited the amounts of the wellness penalty for tobacco use in the Plan's trust thereby decreasing the amount that it was required to contribute to the Plan.  By retaining additional monies that it should have contributed to the Plan but for the wellness penalty for tobacco use, Travelers dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of

the imposition of the unlawful and discriminatory wellness penalty for tobacco use, Travelers enriched itself at the expense of the Plan, resulting in it receiving a windfall.

69.    Defendants also breached their fiduciary duties by: failing to act solely in the interest of participants (and their beneficiaries) in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(A); administering a Plan that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the Plan and related plan materials, including the Plan's wellness program and its compliance with the regulatory framework, as well as any notices regarding the availability of compliant reasonable alternative standards (or lack thereof). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory wellness penalties.

70.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful wellness penalties for tobacco use that were withheld from their paychecks.

71.    Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendants are liable to make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan or a constructive trust all profits it acquired through its violations alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory wellness penalty for tobacco use imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory wellness penalty for tobacco use within the applicable limitations period;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following terms of the Plan that violated ERISA's anti-discrimination provisions and for failing to adequately monitor and review the terms of the Plan to ensure they complied with ERISA;

E. An Order requiring Defendants to provide an accounting of all prior payments of the wellness penalty for tobacco use under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants collected as unlawful surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory wellness penalty for tobacco use;

J. Relief to the Plan from Defendants for its violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, under 29 U.S.C. § 1109, including a declaration

that the tobacco surcharge is unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory wellness penalties on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: October 17, 2024                Respectfully submitted,

/s/ *Philip J. Krzeski*
Philip J. Krzeski (Bar #0403291)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
*pkrzeski@chestnutcambronne.com*

Oren Faircloth (*pro hac vice* to be filed)
David J. DiSabato (*pro hac vice* to be filed)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
*ofaircloth@sirillp.com*
*ddisabato@sirillp.com*

***Attorneys for Plaintiff and the Proposed Class***