# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CARLIE CHIRINIAN, *on behalf of herself and all others similarly situated*, | Case No. 24-cv-3956 (LMP/DTS) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| THE TRAVELERS COMPANIES, INC. and THE TRAVELERS ADMINISTRATIVE COMMITTEE, | |
| Defendants. | |

Philip Joseph Krzeski, **Chestnut Cambronne PA, Minneapolis, MN**; Oren Faircloth and Kimberly Dodson, **Siri & Glimstad LLP, New York, NY**; and Scott M. Haskins, **Siri & Glimstad LLP, Detroit, MI**, for Plaintiff.

Gina K. Janeiro, **Jackson Lewis P.C., Minneapolis, MN**; Lindsey H. Chopin, Rene E. Thorne, Adam R. Carlisle, and Steven Sheesley, **Jackson Lewis P.C., New Orleans, LA**, for Defendants.

Plaintiff Carlie Chirinian ("Chirinian") brought this putative class action alleging that the employer-sponsored health plan of Defendants Travelers Companies, Inc., and Travelers Administrative Committee (collectively, "Travelers") imposes a tobacco surcharge in violation of the Employee Retirement Income Security Act ("ERISA"). *See generally* ECF No. 1. Travelers moves to dismiss, arguing that Chirinian lacks Article III standing to bring her claims, that Chirinian's ERISA claims are time-barred, and that Chirinian's complaint fails to state a claim on which relief can be granted. *See* ECF Nos. 27, 29. The Court concludes that Chirinian largely has standing to press her claims,

1

that her claims are not entirely time-barred, and that one of those claims survives a motion to dismiss.  Accordingly, the motion is granted in part and denied in part.

## BACKGROUND

### *Legal Framework*

ERISA prohibits health plans governed by ERISA from requiring plan participants to "pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual," such as tobacco use.  29 U.S.C. § 1182(b)(1).  However, plans may "establish[] premium discounts or rebates or modify[] otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention."  *Id.* § 1182(b)(2)(B).  The upshot of these provisions is that employers may surcharge plan participants who do not comply with such "wellness programs," and may offer incentives to plan participants who engage in wellness programs, without running afoul of ERISA's nondiscrimination rules in Section 1182.

To legally surcharge plan participants, however, the plan must structure its wellness program to comply with the Public Health Service Act ("PHSA") and federal regulations promulgated by the Department of Labor.  The PHSA articulates several requirements for wellness programs, which are incorporated into ERISA.  *See* 29 U.S.C. § 1185d(a)(1) (providing that PHSA provisions "shall apply to group health plans" under ERISA).  These requirements include that a wellness program must (1) "be reasonably designed to promote health or prevent disease," (2) make available the "full reward" to all similarly situated individuals, (3) make available that full reward "at least once each year," and (4) "disclose

2

in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3).

The Department of Labor incorporated these requirements into federal regulations that further specify the requirements that a wellness program like Travelers' must meet. *See* 29 C.F.R. § 2590.702. Three of those regulations are at issue in this case.[1] *First*, the wellness program "must give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year."[2] 29 C.F.R. § 2590.702(f)(4)(i). The once-per-year requirement is a "bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33162 (June 3, 2013) (codified at 29 C.F.R. § 2590.702). In guidance issued shortly after the promulgation of this regulation, the Department of Labor explained in the context of a tobacco cessation program:

> If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program, the plan

---

[1]     Federal regulations distinguish between four different types of wellness programs: participatory, health-contingent, activity-only, and outcome-based. *See* 29 C.F.R. § 2590.702(f)(1). The requirements for wellness programs depend on the type of wellness program offered. *See id.* § 2590.702(f)(2)–(4). Based on their citations to the Code of Federal Regulations and representations at oral argument, the parties appear to agree that Travelers' wellness program is an outcome-based wellness program; that is, a program "that requires an individual to attain or maintain a specific health outcome . . . in order to obtain a reward," and which may also offer "compliance with an educational program or an activity" as a means to achieve the same reward. *See id.* § 2590.702(f)(1)(v). The Court's analysis therefore looks to the requirements of outcome-based wellness programs.

[2]     This regulatory requirement largely parrots the statutory requirement in 42 U.S.C. § 300gg-4(j)(3)(C).

is not required (but is permitted) to provide another opportunity to avoid the
tobacco premium surcharge until renewal or reenrollment for coverage for
the next plan year.

U.S. Departments of the Treasury, Labor, and Health and Human Services, *FAQs About
Affordable Care Act Implementation (Part XVIII) and Mental Health Parity
Implementation* at 6 (Jan. 9, 2014).[3]

*Second*, the "full reward" for completing the wellness program "must be available
to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). The Department of
Labor interprets this provision to require health plans to offer "a reasonable alternative
standard (or waiver of the otherwise applicable standard) for obtaining the reward" for any
individual who does not meet the applicable health standard (in this case, being tobacco-
free). *Id.* § 2590.702(f)(4)(iv)(A). Moreover, if a plan participant's personal physician
states that meeting the applicable health standard is not medically appropriate for that
participant, the plan "must provide a reasonable alternative standard that accommodates
the recommendations of the individual's personal physician with regard to medical
appropriateness." *Id.* § 2590.702(f)(4)(iv)(C)(4).

*Third*, the plan "must disclose in all plan materials describing the terms of an
outcome-based wellness program, and in any disclosure that an individual did not satisfy
an initial outcome-based standard, the availability of a reasonable alternative standard to
qualify for the reward," including "contact information for obtaining a reasonable

---

[3]    This guidance document is available at https://www.dol.gov/sites/dolgov/files/
EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-18.pdf [https://perma.cc/
F2LF-2K6Q].

alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." *Id.* § 2590.702(f)(4)(v).

### *Factual Background*

Chirinian is a former employee of Travelers who was enrolled in Travelers' employer-sponsored health plan (the "Plan"). ECF No. 1 ¶ 7. Travelers surcharges Plan participants for tobacco use. *Id.* ¶ 4. However, Plan participants can avoid the tobacco surcharge in two ways. First, participants can certify during annual open enrollment that they have not used tobacco products in the preceding six months and do not plan to use tobacco products in the future. *See* ECF No. 30-2 at 17–18.[4] Second, participants may complete a tobacco cessation program at Travelers' expense. *Id.* at 18. Participants must enroll in a tobacco cessation program by March 31 of the Plan year and must complete the program no later than December 15 of the Plan year. *Id.* When participants complete the program in this timeframe, the tobacco surcharge is prospectively waived for the rest of the Plan year, and participants receive a retroactive refund of all tobacco surcharges paid that Plan year. *Id.* If a participant enrolls in a tobacco cessation program after March 31, the participant may be eligible for non-smoker premiums on a prospective basis for the remainder of the Plan year. ECF No. 1 ¶ 25.

Chirinian was surcharged by the Plan for her tobacco use. *Id.* Chirinian recognizes that Travelers has a wellness program that allowed her to avoid the tobacco surcharge if

---

[4]    The Court may consider the Plan's Summary Plan Description on a motion to dismiss because it is necessarily embraced by the pleadings. *See Gelschus v. Hogen*, No. 20-cv-823 (DSD/BRT), 2021 WL 5087549, at *2 (D. Minn. Apr. 6, 2021).

she participated in a tobacco cessation program. *Id.* ¶ 4. But there is no indication in the complaint that Chirinian enrolled in, attempted to enroll in, or even knew about Travelers' tobacco cessation program. In this case, Chirinian alleges that Travelers' wellness program failed to meet the requirements of 29 C.F.R. § 2590.702 in three ways.

*First,* Chirinian observes that to avoid the tobacco surcharge for an entire Plan year, participants in the Plan must enroll in an approved tobacco cessation program by March 31 and complete the program by December 15 of the same Plan year. *Id.* ¶ 24. If a participant fails to enroll in the program by March 31, the participant is unable to avoid the tobacco surcharge for the entire year. *Id.* ¶¶ 25–26. Chirinian alleges that these "arbitrary deadlines" violate the requirement in 29 C.F.R. § 2590.702(f)(4)(iv) that Travelers provide a "reasonable alternative standard" to being tobacco-free, and that the "full reward" must be provided to all "similarly situated" Plan participants. *Id.* ¶¶ 25–26, 50.

*Second*, Chirinian alleges that Plan materials did not disclose the availability of a legally compliant reasonable alternative standard, as required by 29 C.F.R. § 2590.702(f)(4)(v). *Id.* ¶¶ 31–32. This argument is premised on Chirinian's first argument: according to Chirinian, because Travelers failed to provide a "reasonable alternative standard," any description of that standard in Plan materials was necessarily defective. *Id.* ¶ 31.

*Third*, Chirinian alleges that Plan materials did not include a "statement that recommendations of an individual's personal physician will be accommodated," as required by 29 C.F.R. § 2590.702(f)(4)(v). *Id.* ¶ 33.

Chirinian initiated this putative class action on behalf of similarly situated Travelers employees. *See id.* ¶¶ 36–46. Chirinian alleges that because Travelers' wellness program did not comply with federal regulations, she was illegally surcharged for her tobacco use, in violation of ERISA's nondiscrimination rule in 29 U.S.C. § 1182. *Id.* ¶¶ 47–62. Chirinian further alleges that Travelers breached its fiduciary duties to Plan participants by "administering a Plan that does not conform with ERISA's antidiscrimination provisions," "acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants," and "by failing to act prudently and diligently to review the terms of the Plan and related plan materials." *Id.* ¶ 69. Chirinian brings her breach-of-fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(2). *Id.* ¶ 71. Chirinian seeks declaratory relief, injunctive relief, and various other forms of equitable relief, including disgorgement, restitution, and surcharge. *Id.* at 24–25.

Travelers now moves to dismiss the complaint. *See* ECF No. 27.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Travelers first argues that the Court should not reach the merits of Chirinian's claims because Chirinian lacks Article III standing and because her claims are time-barred by the Plan's contractual limitations period. ECF No. 29 at 14–19; 26–27. Travelers also argues that Chirinian's claims fail on the merits. *Id.* at 19–26. The Court addresses each argument in turn.

## I.    Chirinian's Standing To Sue

Standing "must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016) (citation omitted). Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To meet the "irreducible constitutional minimum" required to establish standing, a plaintiff must show that (1) she suffered an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Moreover, standing "is not dispensed in gross": a plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations

8

omitted).  The standing inquiry is not, however, "an assessment of the merits of a plaintiff's claim," and in assessing standing the Court assumes that "on the merits the plaintiffs would be successful." *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016).

### a.    Standing To Seek Prospective Injunctive Relief

Travelers first argues that as a former Plan participant, Chirinian lacks standing to pursue prospective injunctive relief.  ECF No. 29 at 14–15.  To establish an injury-in-fact necessary to pursue prospective injunctive relief, a plaintiff must show that she "faces a threat of ongoing or future harm." *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  But as a former plan participant who will no longer be subject to the Plan's requirements, ECF No. 1 ¶ 7, Chirinian cannot allege a real or immediate threat of "ongoing or future harm" by Travelers' conduct.  *Park*, 205 F.3d at 1037.  Accordingly, to the extent the complaint seeks prospective injunctive relief, Chirinian lacks standing to pursue such relief.  *See Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, 8:23-cv-27, 2023 WL 5105362, at *5 (D. Neb. Aug. 9, 2023) (holding that former plan participants lacked standing to seek prospective injunctive relief); *Burris v. IASD Health Servs. Corp.*, No. 4-94-CV-10845, 1995 WL 843859, at *10 (S.D. Iowa Oct. 2, 1995) (same).

Relying on the Eighth Circuit's decision in *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), Chirinian responds that she is bringing a claim for breach of fiduciary duty on behalf of the Plan under 29 U.S.C. § 1132(a)(2), meaning that she can rely on injury to the Plan to satisfy her own Article III injury-in-fact.  *See* ECF No. 37 at 18–19.  But that is not what *Braden* says.  Rather, *Braden* explains that "so long as

[Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others."  588 F.3d at 592 (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  Translation: Chirinian must first show that she individually has Article III standing to seek a form of relief before she can seek that relief on behalf of others.  *See id.* (explaining that "a plaintiff with Article III standing" may assert claims that "sweep more broadly than the injury [the plaintiff] personally suffered").  Because Chirinian personally lacks standing to seek prospective injunctive relief, she cannot seek such relief on behalf of the Plan.

### b.    Standing To Challenge the Plan

Travelers also argues more broadly that Chirinian fails to show an injury-in-fact for Article III standing because "the Complaint does not allege that she ever participated in, or tried to participate in, the cessation program that she challenges."  ECF No. 29 at 13.  According to Travelers, even if its tobacco cessation program violated ERISA, Chirinian was not injured in any way because she never attempted to participate in the program.

It is true that a defendant's bare violation of a statute, without any allegations about how that violation caused a plaintiff to suffer a concrete injury that is traceable to the defendant's challenged conduct, does not satisfy Article III's standing requirements.  *See Spokeo*, 578 U.S. at 341.  But Travelers misunderstands the injury that Chirinian asserts.  ERISA's antidiscrimination rules prohibit Travelers from imposing a tobacco surcharge, unless "all of the [regulatory] requirements" of its outcome-based wellness program are "satisfied."  29 C.F.R. § 2590.702(f)(4); *see also* 78 Fed. Reg. 33158, 33160 (explaining

10

that the regulations provide "criteria for a program of health promotion or disease prevention . . . *that must be satisfied* in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status" (emphasis added)). Here, Chirinian alleges that Travelers did *not* satisfy all of those regulatory requirements. *See* ECF No. 1 ¶¶ 24–26, 31–33, 50. Assuming that is true—which the Court must do in evaluating standing, *see Am. Farm Bureau Fed'n*, 836 F.3d at 968—Chirinian would have paid tobacco surcharges that Travelers was not legally authorized to levy. Chirinian's payment of a fee that she had a "statutory right not to be charged" counts as a concrete injury for standing purposes. *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019); *see also Lipari-Williams v. Mo. Gaming Co., LLC*, 339 F.R.D. 515, 524 (W.D. Mo. 2021) (finding Article III standing under similar circumstances).

Travelers also suggests that the redressability and traceability elements of standing are not met because "even if the Court ordered retroactive refunds of tobacco surcharges to individuals who completed the cessation program after the Plan's deadlines for doing so, [Chirinian] would recover nothing because she did not complete a cessation program based on the facial allegations in the Complaint." ECF No. 42 at 7–9. That is wrong. If Travelers' wellness program does not meet all of the regulatory requirements, then Travelers was not authorized to impose the tobacco surcharge on *any* Plan participants, regardless of whether they participated in the cessation program. *See* 29 C.F.R. § 2590.702(f)(4). And assuming Chirinian is correct on the merits, her injury—the payment of tobacco surcharges—is traceable to Travelers' decision to illegally levy a

11

tobacco surcharge and can be redressed by a refund of that surcharge. Chirinian has standing to pursue that claim.

## II.    Statute of Limitations

Travelers next argues that Chirinian's suit is time-barred by the Plan's contractual limitations period. ECF No. 29 at 26–27. ERISA allows plans and plan participants to agree to a reasonable limitations period. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 105–06 (2013). Here, the Plan contains the following relevant limitations period: "If you want to bring a lawsuit related to the plan for any reason other than to claim a benefit, you must do so within one (1) year of the act or omission giving rise to the claim. Failure to file a lawsuit within these time periods will cause your rights to expire." ECF No. 30-2 at 61.

Chirinian argues that this provision is "buried" within the Plan and is vague and confusing, which "undermine[s] the enforceability of the limitations clause in this case." ECF No. 37 at 36–38. But although "modern insurance policies are complex and fraught with terms of art, this alone does not make the policy, or the contractual limitations period, unreasonable." *Furleigh v. Allied Grp. Inc.*, 281 F. Supp. 2d 952, 968–69 (N.D. Iowa 2003) (rejecting argument that a contractual limitations period was "difficult, if not impossible, for a claimant of ordinary facilities" to understand). The catch-all contractual limitations period in the Plan is broad, but it plainly applies to any "lawsuit related to the plan *for any reason other than to claim a benefit*." ECF No. 30-2 at 61 (emphasis added).

That appropriately informs the average Plan participant that if they have a dispute with the Plan *for any reason* other than a claim for benefit, they must bring a lawsuit within

one year of the conduct that underlies that dispute.  The Court must enforce that broad limitations period "as written."  *Heimeshoff*, 571 U.S. at 108.  And although Chirinian faults the Plan for failing to provide "meaningful guidance on when the limitations period begins for claims challenging the legality of the wellness program," ECF No. 37 at 40, a plan need not delineate specific limitations periods for each and every type of potential grievance against the plan; it is enough that Chirinian's grievance falls squarely within the broad scope of the Plan's contractual limitations period.  *See, e.g.*, *Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008) (finding that contractual limitations period was "broad enough" to encompass the plaintiff's claim under ERISA); *Rose-Holliday v. Sun Life Assurance Co. of Can.*, No. C20-1249 TSZ, 2021 WL 75255, at *2 (W.D. Wash. Jan. 8, 2021) (enforcing "broad" contractual limitations period providing that "[n]o legal action may start . . . more than three years after the time Proof of Claim is required" (alteration in original)).

Chirinian, however, is not entirely out of luck.  The Plan's limitations period requires a participant to bring a lawsuit within one year "of the act or omission giving rise to the claim."  ECF No. 30-2 at 61.  Chirinian's theory of the case is that Travelers violated ERISA's antidiscrimination rules and breached its fiduciary duties each time it charged Chirinian a tobacco surcharge and each year Travelers maintained its allegedly illegal tobacco surcharge.  ECF No. 36 at 41–43.  Putting two and two together, the Court agrees that each time Chirinian was required by Travelers to pay a tobacco surcharge constituted an "act" that gave rise to a claim against Travelers under the Plan's limitations period.

13

This conclusion comports with how courts treat allegations of fiduciary breaches when applying ERISA's statute of limitations. "[C]ourts have found that a continuing violation theory may be appropriately applied in an ERISA case 'where separate violations of the same type, or character, are repeated over time' and the claims are based on 'repeated decision-making, of the same character, by the fiduciaries.'" *Adedipe v. U.S. Bank, Nat'l Ass'n*, 62 F. Supp. 3d 879, 898 (D. Minn. 2014) (quoting *Novella v. Westchester County*, 661 F.3d 128, 146 (2d Cir. 2011)). However, when a plaintiff's claim is "based on a single decision that results in lasting negative effects," only one cause of action accrues. *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 558 F. Supp. 2d 378, 401 (E.D.N.Y. 2008).

According to an exhibit submitted by Travelers, Chirinian paid a tobacco surcharge on her health insurance premiums twice a month during her period of employment from May 9, 2022, to August 3, 2024. ECF No. 30-3 at 2.[5] Assuming that these surcharges were levied in violation of ERISA, they would constitute "separate violations of the same type" that are "repeated over time" (specifically, twice a month over 27 months). *Adedipe*, 62 F. Supp. 3d at 898 (citation omitted). Indeed, even Travelers agrees that the tobacco surcharges were "repeated act[s] of the same kind and nature." ECF No. 42 at 24.[6] And

---

[5]    Because this exhibit does not contradict the complaint, and because Chirinian does not object to the Court considering the exhibit, the Court elects to consider the exhibit without converting Travelers' motion to dismiss into a motion for summary judgment. *See Minn. Majority v. Mansky*, 708 F.3d 1051, 1056 (8th Cir. 2013).

[6]    Travelers cites two cases that purportedly stand for the proposition that the continuing-violation theory does *not* apply to repeated acts of the same kind and nature.

in the context of the Plan's limitations period, Travelers "act[ed]" each time it imposed an allegedly unlawful tobacco surcharge on Chirinian.  ECF No. 30-2 at 61; *see Act*, Black's Law Dictionary (12th ed. 2024) (defining "act" as "[s]omething done or performed").

Chirinian filed suit on October 17, 2024, ECF No. 1, meaning that Chirinian may challenge the tobacco surcharges imposed since October 17, 2023, *see* ECF No. 30-2 at 61. Because Chirinian paid tobacco surcharges until August 3, 2024, she is not time-barred from challenging the tobacco surcharges Travelers levied on her from October 17, 2023, to August 3, 2024.  *See* ECF No. 30-3 at 2.

## III.    Merits of Chirinian's Claims

Having resolved the threshold issues of standing and timeliness, the Court now analyzes the merits of Chirinian's claims.

### a.    Violation of ERISA's Antidiscrimination Rules

As explained above, Travelers can only impose a tobacco surcharge if its outcome-based wellness program comports with all the requirements of 29 C.F.R. § 2590.702(f)(4). Chirinian asserts that Travelers' tobacco cessation program fails to meet these requirements in three ways, each of which is considered below.

---

ECF No. 42 at 24.  Neither of those cases made such a holding, and both cases dealt with a single wrongful act, the effects of which were felt over time, not a repeated act of the same kind and nature.  *See Miele v. Pension Plan of N.Y. State Teamsters Conf. Pension & Ret. Fund*, 72 F. Supp. 2d 88, 99 (E.D.N.Y. 1999) (wrongful act was the act of calculating plaintiff's benefits at a single time in the past); *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 139 (1st Cir. 2005) (wrongful act was the act of misclassifying employees at a single time in the past).  As Travelers recognizes, imposing a bimonthly tobacco surcharge is a "repeated act of the same kind and nature," which allows Chirinian to challenge at least some of the tobacco surcharges that she paid.  *See Adedipe*, 62 F. Supp. 3d at 898.

### i.    Timing Restrictions on Enrolling in a Tobacco Cessation Program

Chirinian observes that 29 C.F.R. § 2590.702(f)(4)(iv) requires that "all similarly situated individuals" who complete the reasonable alternative standard (here, the tobacco cessation program) must be eligible for the "full reward" available to non-smokers. ECF No. 37 at 23–26. Chirinian takes issue with Travelers' requirement that individuals participating in the tobacco cessation program enroll by March 31 of the Plan year and complete the program by December 15 of that same Plan year. According to Chirinian, 29 C.F.R. § 2590.702(f)(4)(iv) requires "participants who complete the [tobacco cessation program] at any point in the year to receive the same benefit as those who met the initial standard from the start." ECF No. 37 at 23. Chirinian therefore concludes that Travelers cannot "bypass" 29 C.F.R. § 2590.702(f)(4)(iv) with "arbitrary deadlines and cutoff dates." *Id.* at 26.

Chirinian's position cannot be squared with 29 C.F.R. § 2590.702(f)(4)(i), which states that an outcome-based wellness program "must give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year." This provision creates a "bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." 78 Fed. Reg. 33158, 33162. The Department of Labor has confirmed that if a participant has a "reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward" a plan need not "provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year." U.S. Departments of the Treasury, Labor, and Health and Human Services,

16

*FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation* at 6 (Jan. 9, 2014).[7]

That is exactly what the Plan does. The Plan provides a "reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year." *Id.* And so long as the tobacco cessation program is completed by December 15 of the Plan year, the tobacco surcharge is prospectively waived for the rest of the Plan year, and participants receive a retroactive refund of all tobacco surcharges paid that Plan year. *See* ECF No. 30-2 at 18. Because the Plan offers participants "the opportunity to qualify for the reward under the program at least once per year," ERISA requires nothing more of Travelers. 29 C.F.R. § 2590.702(f)(4)(i).

Chirinian recognizes the "frequency of opportunity" requirement in 29 C.F.R. § 2590.702(f)(4)(i) but argues that Travelers "conflates" that requirement with the "full reward" requirement of 29 C.F.R. § 2590.702(f)(4)(iv). ECF No. 37 at 10. On the contrary, Travelers is observing a cardinal rule of statutory interpretation: courts must interpret a statute "as a symmetrical and coherent regulatory scheme," and "fit, if possible, all parts into an harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,

---

[7] Perhaps sensing that this administrative guidance vitiates her position, Chirinian contends that this guidance document should not be given persuasive weight by the Court. ECF No. 37 at 27–29. Administrative guidance like the FAQs guidance document is entitled to respect and may be considered persuasive authority, particularly when the agency has expertise in handling and regulating the application of the relevant law. *See Baouch v. Werner Enters., Inc.*, 908 F.3d 1107, 1117 (8th Cir. 2018). Here, not only does the Department of Labor have expertise in handling ERISA issues (as Chirinian herself recognizes, ECF No. 37 at 23–26), the Court also finds the FAQs guidance persuasive for the simple reason that it accords with the plain language of 29 C.F.R. § 2590.702(f)(4)(i).

529 U.S. 120, 133 (2000) (citations omitted). A statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."[8] *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted).

According to Chirinian, a plan does not offer a "reasonable alternative standard" for obtaining the "full reward" unless plan participants are allowed to enroll in and complete a tobacco cessation program at any point in the year. But then what role would the "frequency of opportunity" requirement in 29 C.F.R. § 2590.702(f)(4)(i) play at all? Under Chirinian's reading of the regulation, a plan that complies with 29 C.F.R. § 2590.702(f)(4)(i) by offering the opportunity to qualify for the reward "once per year" would simultaneously violate the "full reward" requirement of 29 C.F.R. § 2590.702(f)(4)(iv). Put another way, if the "full reward" requirement of 29 C.F.R. § 2590.702(f)(4)(iv) required plans to offer enrollment in a tobacco cessation program more than once a year, then the once-a-year "frequency of opportunity" requirement in 29 C.F.R. § 2590.702(f)(4)(i) would be rendered inoperative and superfluous. That is an unacceptable interpretative result. *See Corley*, 556 U.S. at 314.

Instead, the Court must attempt to harmonize the "full reward" and "frequency of opportunity" requirements. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 133. The Court can easily do so: under a proper reading of the regulations, a plan need only provide one opportunity per year to enroll in a tobacco cessation program, as long as the plan

---

[8]    The same basic rules that apply to statutory interpretation apply to regulatory interpretation. *See Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019).

18

provides the "full reward" of the wellness program to those who timely enroll in and complete the cessation program. As described above, the Plan does exactly that.

Chirinian attempts to draw parallels between this case and *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021), but that comparison quickly unravels. In *Macy's*, the Department of Labor alleged that Macy's tobacco cessation program did not comply with the "full reward" requirement. *Id.* at *15. That was because Macy's "would not provide retroactive reimbursement of the full Tobacco Surcharge for the entire year for all individuals who completed the reasonable alternative standard at some point during the year." *Id.* Here, however, Travelers *does* provide a retroactive reimbursement of the full tobacco surcharge for the entire year for any Plan participant who completes the cessation program by December 15. *See* ECF No. 30-2 at 18 (Summary Plan Description explaining that Plan participants will "receive a refund of the difference in cost between the smoker and non-smoker premiums that you paid retroactive to January 1"). *Macy's* is therefore inapposite.[9]

Finally, the Court observes that Chirinian's proposed solution—allowing Plan participants to enroll in and complete the cessation program whenever they want—would defeat the purpose of the "frequency of opportunity" requirement: to establish a "bright-

---

[9]    The fact that Travelers provides retroactive reimbursement of the full tobacco surcharge also distinguishes this case from the supplemental authority cited by Chirinian. *See Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179-SRB, 2025 WL 1260700, at *4–6 (W.D. Mo. Apr. 15, 2025) (noting that plan did not provide retroactive rebate of tobacco surcharges, which plausibly stated a violation of ERISA's antidiscrimination rules); *Bokma v. Performance Food Grp., Inc.*, No. 3:24cv686 (DJN), 2025 WL 1452042, at *3 (E.D. Va. May 20, 2025) (same). Nonetheless, the Court grants Chirinian's motions for leave to file supplemental authority. *See* ECF Nos. 39, 45.

line standard" for enrolling plan participants in cessation programs. 78 Fed. Reg. 33158, 33162. Chirinian evidently disagrees with the propriety of this bright-line standard, but it is this Court's job to say what the law is, not what the law should be. *See Haug v. Bank of Am., N.A.*, 317 F.3d 832, 835 (8th Cir. 2003) (citation omitted) (explaining that a statute "should be enforced as written unless there is clear legislative intent to the contrary"). All interpretative roads lead to Travelers' interpretation of the regulations, so the Court agrees with Travelers that this theory of liability cannot proceed.

There is, however, one more wrinkle to iron out in Chirinian's argument. Chirinian argues in her opposition brief that Plan participants who receive a retroactive refund do not receive the required "full reward" because those refunds are taxable income, "meaning participants do not receive what non-smokers receive (i.e., no penalty whatsoever)." ECF No. 37 at 12. As an initial matter, this aspect of the Plan was not alleged in the complaint, so the Court need not address it now. *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) (citation omitted) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original)).

Even if the Court elected to address this allegation, it does not plausibly allege that the "full reward" requirement was unmet. Plan participants who are surcharged have higher pretax payroll deductions for health insurance premiums than non-smokers who never pay a surcharge and thus pay a lower pretax premium. *See* ECF No. 30-2 at 17 (Summary Plan Description explaining that premiums are deducted from an employee's paycheck and are paid "with before-tax dollars from [the employee's] salary"). But non-smoking Plan participants who pay a lower pretax premium have less money deducted

from their payroll, leaving them with a higher taxable income at the outset. From a taxable income standpoint, then, the retroactive refund to Plan participants enrolled in the wellness program simply places participants in the position they would have been in had they never paid higher pretax premiums. And, of course, a participant's ultimate income tax burden is dependent on a variety of factors, such as gross income level, family status, and the ability to claim deductions and credits. Chirinian's allegation that Plan participants who receive the retroactive refund as taxable income somehow receive a lesser benefit is ultimately premised on speculation, which does not suffice on a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### ii.    Disclosure of a Legally Compliant Reasonable Alternative Standard

Chirinian's second argument is that Plan materials did not disclose the availability of a legally compliant reasonable alternative standard, as required by 29 C.F.R. § 2590.702(f)(4)(v). ECF No. 1 ¶¶ 31–32. This argument is premised on Chirinian's first argument: because Travelers failed to provide a "reasonable alternative standard" that offers participants the "full reward," any description of that standard in Plan materials was necessarily defective. *Id.* ¶ 31. However, because the Court has concluded that Chirinian's complaint fails to allege that the Plan violated the "full reward" requirement under 29 C.F.R. § 2590.702(f)(4)(iv), Chirinian's derivative disclosure claim under 29 C.F.R. § 2590.702(f)(4)(v) also fails.

### iii.    Disclosure that Physician Recommendations Will be Accommodated

As a final argument challenging the Plan's compliance with ERISA's antidiscrimination rules, Chirinian alleges that Plan materials did not include a "statement that recommendations of an individual's personal physician will be accommodated," as required by 29 C.F.R. § 2590.702(f)(4)(v).  ECF No. 1 ¶ 33.  The regulations do not appear to require that plan documents state verbatim that the "recommendations of an individual's physician will be accommodated."  *See* 29 C.F.R. § 2590.702(f)(6).  Rather, plan documents must simply inform plan participants that they have the "option to involve [their] personal physician."  29 C.F.R. § 2590.702(f)(4)(vi).  The regulations even offer sample language to accomplish this notice requirement: for example, it suffices if plan documents explain that "[a plan] will work with [a participant] (and, if [the participant] wish[es], with [the participant's] doctor) to find a wellness program with the same reward that is right for [the participant] in light of [the participant's] health status."  29 C.F.R. § 2590.702(f)(6).  At a minimum, however, plan documents must make reference to a participant's personal physician.

Turning to the Plan's Summary Plan Description, the Court cannot find any language that informs Plan participants of the "option to involve [their] personal physician."  29 C.F.R. § 2590.702(f)(4)(vi).  Indeed, no mention of a Plan participant's personal physician is made when discussing the tobacco cessation program.  *See* ECF No. 30-2 at 17–18.

Travelers concedes that the Summary Plan Description lacks language that informs Plan participants of the "option to involve [their] personal physician," as required by 29 C.F.R. § 2590.702(f)(4)(vi). Instead, Travelers reveals a purported ace up its sleeve: *Loper Bright*. Travelers observes that the requirement to include language that informs Plan participants of the "option to involve [their] personal physician" derives only from federal regulations. *See* ECF No. 42 at 20–21. However, Travelers asserts that this regulation "re-write[s]" ERISA's and the PHSA's statutory commands, which is impermissible after the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). *Id.*

For several reasons, the Court will not address Travelers' argument at this time. First, Travelers raised the purported invalidity of 29 C.F.R. § 2590.702(f)(4)(vi) for the first time in its reply brief, which alone forfeits its *Loper Bright* argument for purposes of its motion to dismiss. *See Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020) (citation omitted) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.").

Second, Travelers' briefing on its *Loper Bright* argument is woefully deficient. Indeed, all Travelers says is that "a regulation cannot re-write the law." *See* ECF No. 42 at 20–21. But the bare fact that regulations "fill up the details" of a statutory scheme does not render those regulations invalid under *Loper Bright*. *See Loper Bright*, 603 U.S. at 395 (quoting *Wayman v. Southard*, 23 U.S. 1, 43 (1825)). Indeed, the Department of Labor is so authorized to fill up the details of ERISA. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (quoting 29 U.S.C. § 1135) ("ERISA empowers the Secretary of Labor to 'prescribe such regulations as [s]he finds necessary or appropriate to carry out'

23

the statutory provisions securing employee benefit rights."); *see also* 42 U.S.C. § 300gg-4(n) ("Nothing in [the relevant PHSA] section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section.").  Travelers does not provide any reasoned analysis explaining why 29 C.F.R. § 2590.702(f)(4)(vi) is an invalid exercise of the Department of Labor's broad discretionary authority to promulgate regulations that implement ERISA.  Considering the drastic remedy Travelers requests—invalidation of a federal regulation—the Court will not decide that question on this inadequately briefed record.  *See In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th Cir. 2024) (explaining that a court is not obliged to consider a "perfunctorily raised, undeveloped argument").  Travelers is free to renew its argument with more comprehensive briefing at a later stage of this case.

Putting aside Travelers' scant *Loper Bright* argument, there is no dispute that the Summary Plan Description lacks the language required by 29 C.F.R. § 2590.702(f)(4)(vi). To impose a tobacco surcharge on plan participants without running afoul of ERISA's antidiscrimination rules, Travelers must satisfy "*all* of the [regulatory] requirements" of an outcome-based wellness program under 29 C.F.R. § 2590.702(f)(4) (emphasis added).  All means all.  This is the case no matter how small the requirement may be.  *See Boldt v. N. States Power Co.*, 904 F.3d 586, 592 (8th Cir. 2018) (citation omitted) ("When used as an adjective, as it is here, 'all' means 'each and every one of.'").  Because Chirinian has plausibly alleged that the Plan does not satisfy "all" of the requirements of 29 C.F.R.

24

§ 2590.702(f)(4), Chirinian has plausibly alleged that Travelers violated ERISA's antidiscrimination rules by imposing a tobacco surcharge.

### b.    Breach of Fiduciary Duty Claims

Chirinian next alleges that Travelers breached its fiduciary duties to Plan participants in three ways: (1) by "administering a Plan that does not conform with ERISA's antidiscrimination provisions," (2) by misusing Plan assets for Travelers' own financial requirements, and (3) by failing to review or monitor the wellness program to ensure its ongoing compliance with ERISA.  ECF No. 1 ¶¶ 27, 29, 35, 69.  Chirinian brings her breach-of-fiduciary-duty claim pursuant to 29 U.S.C. § 1132(a)(2).  *Id.* ¶ 71.

A claim for breach of fiduciary duty under ERISA requires three elements: (1) defendant was a fiduciary of the plan, (2) defendant was acting in that capacity, and (3) defendant breached a fiduciary duty.  *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022) (citation omitted).  Additionally, a suit under Section 1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985), and therefore "does not provide a remedy for individual injuries distinct from plan injuries," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).  Accordingly, under Section 1132(a)(2), a plaintiff must show that there was a loss to the *plan.  See Roth v. Sawyer-Cleator Lumber Co.* ("*Roth I*"), 16 F.3d 915, 919–20 (8th Cir. 1994) ("[I]f individual plan participants suffer losses, but the plan does not, the trustee is not personally liable for damages . . . .").

Even if the Court agreed with Chirinian that Travelers was acting in a fiduciary capacity (a disputed issue that the Court does not decide), the Court agrees with Travelers

that Chirinian's breach-of-fiduciary-duty claim fails because she does not plausibly allege that the Plan suffered any losses from Travelers' alleged fiduciary breaches, as required to sustain an action under Section 1132(a)(2). As it relates to loss, Chirinian alleges that "[a]s a direct and proximate result of [Travelers'] fiduciary breaches, [Plan participants] lost millions of dollars in the form of unlawful wellness penalties for tobacco use that were withheld from their paychecks." ECF No. 1 ¶ 70. But this only alleges "individual injuries distinct from plan injuries," which cannot support a Section 1132(a)(2) claim. *LaRue*, 552 U.S. at 256.

In fact, Travelers' alleged breaches would have only served to *benefit* the Plan. Determining whether a plan has suffered a loss requires "a comparison . . . between the value of the plan assets before and after the breach." *Roth v. Sawyer-Cleator Lumber Co.* ("*Roth II*"), 61 F.3d 599, 603 (8th Cir. 1995). As Chirinian alleges, "[Travelers] collected and deposited the amounts of the wellness penalty for tobacco use in the Plan's trust," meaning that the Plan's assets were *increased* by the allegedly unlawful tobacco surcharges. ECF No. 1 ¶ 68. Consequently, the Plan "has more funds than it would have possessed absent the alleged breach of [Travelers'] fiduciary duty," which fails to allege a loss to the plan that can be made good under Section 1132(a)(2). *Barnes v. Blue Cross & Blue Shield of Mich.*, No. 03-cv-40025, 2009 WL 909551, at *9 (E.D. Mich. Mar. 31, 2009); *see also Hart v. Grp. Short Term Disability Plan for Emps. of Cap Gemini Ernst & Young*, 338 F. Supp. 2d 1200, 1201 (D. Colo. 2004) (holding that plan participant failed to allege loss to the plan under Section 1132(a)(2) when the only loss alleged was the participant's "economic and noneconomic damages as a result of [the] breach of fiduciary

26

duties"); *N.R. ex rel. S.R. v. Raytheon Co.*, 24 F.4th 740, 750 (1st Cir. 2022) (explaining that courts regularly dismiss Section 1132(a)(2) claims that "do not allege damage to a plan's financial integrity and do not seek a remedy that will inure to the plan as a whole" and collecting cases so holding). Indeed, in *Macy's*, the court was faced with a Section 1132(a)(2) claim premised on similar allegations of improper tobacco surcharges. *Sec'y of Lab. v. Macy's*, No. 1:17-cv-541, 2022 WL 407238, at *11 (S.D. Ohio Feb. 10, 2022). Although the court dismissed the Section 1132(a)(2) claim on other grounds, the court noted that it "doubts that it would also have determined that the [complaint] alleged 'losses to the plan.'" *Id.* This Court similarly concludes that Chirinian fails to plausibly allege a loss to the Plan.

In response, Chirinian argues that "Defendants enriched Travelers at the expense of the Plan by collecting participant wellness penalties and depositing those amounts into the Plan trust, thereby reducing Travelers' own funding obligations." ECF No. 37 at 37. But it is not plausible that increasing the assets of the Plan's trust (which Chirinian alleges occurred) would constitute conduct "at the expense of the Plan." *See Barnes*, 2009 WL 909551, at *9. Chirinian further protests that "Travelers retained monies it otherwise would have been required to contribute [to the Plan]," which constituted a prohibited transaction under ERISA because it "created a net financial benefit to Travelers and a corresponding loss to the Plan." ECF No. 37 at 37. But again, Chirinian does not allege *how* the Plan would have experienced a loss from Travelers' alleged fiduciary breaches. By Chirinian's own allegations, the Plan was *enriched* by those breaches. ECF No. 1 ¶ 68.

27

In fact, in Chirinian's ideal world, more Plan participants would have avoided the tobacco surcharge, meaning that the Plan would have collected *less* money from Plan participants. That indicates that Travelers allegedly engaged in conduct at the expense of individuals, not the Plan. And even if collecting less money from Plan participants meant that Travelers would have to contribute more to the Plan, from a balance-sheet perspective, the Plan is no worse off. As Chirinian's counsel recognized at oral argument, Travelers' alleged breach left the value of the Plan's assets in the same position had the breach not occurred. Eighth Circuit case law does not recognize such a breach to cause a "loss to the plan" required to sustain a Section 1132(a)(2) claim. *See Roth II*, 61 F.3d at 603.

The tobacco-surcharge cases decided to date do not convince the Court otherwise. In *Bokma v. Performance Food Group, Inc.*, the court held that plaintiffs had adequately alleged a loss to the plan because "Plaintiffs and members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks." No. 3:24cv686 (DJN), 2025 WL 1452042, at *14 (E.D. Va. May 20, 2025). But losses to individual plan participants are *not* automatically losses to the plan, *Roth I*, 16 F.3d at 919–20, so it is unclear why improper deductions from individual employees' paychecks demonstrates a loss *to the plan*. The Court therefore respectfully finds *Bokma*'s analysis unpersuasive.

In *Mehlberg v. Compass Group USA, Inc.*, the court held that plaintiffs had adequately alleged a loss to the plan because the plaintiffs alleged that the employer "kept the illegal tobacco surcharge to offset its own contributions, when those funds should have been deposited into the Plan." No. 24-cv-04179-SRB, 2025 WL 1260700, at *7 (W.D. Mo.

Apr. 15, 2025). However, unlike in *Mehlberg*, Chirinian here explicitly alleges that the tobacco surcharges *were* deposited into the Plan. *See* ECF No. 1 ¶ 68 ("Defendants collected and deposited the amounts of the wellness penalty for tobacco use in the Plan's trust . . . .").

Whether Travelers incidentally benefited from the challenged administration of the tobacco surcharge is immaterial to whether the Plan suffered a compensable loss under Section 1132(a)(2). To the extent that Chirinian asserts that Travelers' conduct is a "prohibited transaction," that argument puts the cart before the horse. Although that allegation may be relevant to alleging breach of a fiduciary duty, in bringing a Section 1132(a)(2) claim, Chirinian must also plausibly allege a loss to the "plan as a whole" resulting from that breach. *Russell*, 473 U.S. at 142 n.9. Because Chirinian only alleges individual losses, not plan-wide losses, she fails to plausibly allege a Section 1132(a)(2) claim. *See Roth I*, 16 F.3d at 919–20.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Travelers' Motion to Dismiss (ECF No. 27) is **GRANTED IN PART and DENIED IN PART** as follows:

    a. Count I of the Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

    b. Count II of the Complaint survives to the extent that it is premised on the failure to notify Plan participants that recommendations of an

individual's personal physician will be accommodated.  Count II is

otherwise **DISMISSED WITHOUT PREJUDICE**.

    c.    Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

2.    Chirinian's Motions for Leave to File Supplemental Authority (ECF Nos. 39, 45) are **GRANTED**.

Dated: July 29, 2025        _s/Laura M. Provinzino_
                            Laura M. Provinzino
                            United States District Judge