**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CARLIE CHIRINIAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS COMPANIES, INC. and THE TRAVELERS ADMINISTRATIVE COMMITTEE<br><br>Defendants. | Civil Action No.: 0:24-cv-03956-LMP-DTS<br><br><br><br>FIRST AMENDED COMPLAINT – CLASS ACTION |

Plaintiff Carlie Chirinian ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Travelers Companies, Inc. and the Travelers Administrative Committee (collectively, "Travelers" or "Defendants") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1.      It is both unfair and unlawful for entities like to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendants' unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Specifically, ERISA requires that wellness programs that are tied to tobacco-use surcharges must inform participants of the availability of a reasonable alternative standard and to disclose that the recommendations of a participant's personal physician

will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v) and 45 C.F.R. § 146.121(f)(4)(iv). Under the Travelers Trusteed Employee Benefit Plan (the "Plan"), Defendants impose an unlawful tobacco surcharge on participants, but fails to offer a compliant wellness program. Specifically, Defendants fail to properly notify participants of their rights insofar as the disclosures provided do not contain the physician-accommodation statement in any materials provided to participants prior to 2025, including the Summary Plan Description ("SPD"). By failing to provide clear notice of participants' rights, Defendants violated ERISA's anti-discrimination and fiduciary duty provisions and deprived employees of the ability to avoid unlawful surcharges through the involvement of their own doctors.

2.      Tobacco surcharges have become increasingly common, but they are only lawful if imposed through a ***compliant*** "wellness program" that satisfies strict conditions established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") under ERISA. In 2014, the Departments jointly issued detailed regulations interpreting ERISA § 702, 29 U.S.C. § 1182, which prohibits discrimination in group health plans based on health status. These regulations set forth clear criteria that "***must*** be satisfied" for a tobacco surcharge to fall within the safe harbor for health-contingent wellness programs. One of those core requirements is the obligation to provide participants with clear notice of the availability of a reasonable alternative standard and an express statement that the recommendations of a participant's personal physician will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(iv). Failure to include this notice renders the program noncompliant, and courts routinely defer to the agency's interpretation of its own regulatory framework when evaluating such violations. See *Auer v. Robbins*, 519 U.S. 452 (1997).

3.      The Departments' regulatory requirements are designed to ensure that wellness programs genuinely promote health and do not operate as a "subterfuge for discriminating based on a health factor." 29 C.F.R. § 2590.702(f)(4)(iii). To qualify as a compliant wellness program, employers must provide meaningful notice to participants, including a statement that a reasonable alternative standard is available and that the recommendations of the participant's personal physician will be accommodated. These notice obligations are essential because they ensure that participants are aware of their rights and have a fair opportunity to avoid discriminatory surcharges. Defendants' wellness program fails this basic test. Neither the SPD, nor the benefit enrollment materials contain any disclosure that personal physician recommendations will be honored. The SPD, while referencing a reasonable alternative standard, does not provide this key notice disclosure. Year after year, the Plan's fiduciaries failed to notify participants of their right to have their physician involved in the development of an alternative standard and failed to review these Plan communications to ensure they complied with ERISA's requirements.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the "savings" employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] Without proper notice

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

and transparent rules, these program can function less as health initiative and more as revenue-generating schemes. That danger is increased when employers omit the mandatory disclosures that would allow employees to avoid surcharges through their physicians' recommendations. The regulatory framework is designed precisely to prevent this kind of misuse by requiring plan sponsors to prove compliance once challenged, thereby ensuring that wellness programs serve health goals rather than simply penalizing those least able to shoulder extra costs.

5.      Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "reasonable alternative standard" that allows "all similarly situated individuals" to avoid a surcharge if they are unable to meet the program's initial standard, such as certifying that they are tobacco-free. Critically, ERISA's implementing regulations require that plans clearly disclose the availability of a reasonable alternative standard *and* state that participants' personal physician recommendations will be accommodated.[3] These disclosures must appear ***in all plan materials that describe the terms of the wellness program***, including the SPD and Plan document.[4] Defendants' materials fail to include this mandatory language. This omission deprived participants of the information they needed to understand all of their rights to avoid the surcharge, rendering

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**"); *see also* 29 C.F.R. § 2590.702(f)(4)(v).

[4] Final Regulations, 33166 ("For ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) ***are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents*** (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." (emphasis added)).

the program noncompliant with ERISA's wellness regulations and reflecting a broader breach of fiduciary duty in administering the Plan.

6. Defendants are not entitled to the statutory safe harbor because their wellness program fails to satisfy the mandatory regulatory requirements that *"must be satisfied"* for a premium differential based on a health factor to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendants' program is that it fails to inform participants that their personal physician's recommendations will be accommodated. None of the materials describing the surcharge contain the required physician-accommodation disclosure, leaving participants with the impression that this avenue to avoid the surcharge is unavailable to them. This omission violates the criteria for a compliant program outlined in the Final Regulations, which require that the disclosure appear in **all** materials that describe the terms of the program, especially the SPD and Plan document, to ensure participants are fully aware of all of the avenues available to them to avoid the surcharge. These omissions demonstrate that Defendants' program is not a compliant "program[] of health promotion and disease prevention" but instead a cost-shifting mechanism that unlawfully transfers healthcare costs to employees without satisfying the conditions necessary to invoke ERISA's safe harbor.

7. Plaintiff is a former employee of Travelers who paid the unlawful premium differential to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on her and continues to impose such a burden on those similarly situated.

8. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendants from continuing to profit from their violations under 29

U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have legal obligations to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions

## PARTIES

9.     Plaintiff Carlie Chirinian is, and at all times mentioned herein was, an individual citizen of the State of Colorado residing in the County of Arapahoe. Ms. Chirinian was an employee of Travelers until earlier this year who was paying smoker rates for health insurance offered through her employer during the applicable limitations period.

10.     Plaintiff Chirinian is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

11.     Travelers is a publicly traded insurance company incorporated in Minnesota, with its principal place of business in New York City, New York. Travelers provides a broad range of insurance products and services across multiple sectors, including personal, commercial, and specialty lines, and operates throughout the U.S. and internationally.

12.     The Travelers Administration Committee ("TAC") is the committee that has fiduciary responsibility for the administration and operation of the Plan. The TAC is a named Administrator and fiduciary of the Plan.

13.     At all times relevant to this lawsuit, Defendants sponsored, maintained, and managed the Plan. Recently filed public documents show the Plan has over 30,000 active participants as of December 31, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendant Travelers because it is incorporated in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to its activities and conduct concerning Plaintiff and the Class in the State of Minnesota.  This Court has jurisdiction over the TAC because, upon information and belief it is an unincorporated association existing under the laws of the State of Minnesota. The TAC transacts business in this District, maintains continuous and systematic contacts within the State of Minnesota, and has purposefully availed itself of the privilege of conducting business here. Further, upon information and belief, the individual members of the TAC reside and work in this District

16.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which Defendant Travelers is incorporated. Additionally, Defendants conduct business and can be found in this District.

## FACTUAL BACKGROUND

### I.    DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A.  Statutory and Regulatory Requirements

17.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related

factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

18.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

19.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

20.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care Act ("ACA")

and Public Health Service Act ("PHSA") in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

21.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden is on the employer to prove that it complied with *all* the necessary regulatory criteria, including disclosure in all plan materials.

22.     Compliance with the regulatory criteria is ***not*** optional and cannot be satisfied by partial or confusing disclosure. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

23.     In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent

employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. That is precisely the flaw here. Defendants' tobacco surcharge program omitted the mandatory disclosures in the materials employees actually used to elect coverage, making the program a cost-shifting penalty rather than a lawful wellness initiative. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***." (emphasis added)).[5] In sum, a wellness program that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.

### B. Regulatory Criteria

24.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

---

[5] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq*.] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards:   "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*."  29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

25.     The Departments have explained that ERISA's wellness program rules are designed to *promote health without enabling discrimination*. The Final Regulations reflect this intent by

11

requiring that any program imposing a premium differential, such as a tobacco surcharge, must provide participants with a genuine and recurring opportunity to avoid the surcharge by satisfying a reasonable alternative standard.

26.     The once-per-year requirement was adopted as a bright-line rule to ensure that participants have a *meaningful* opportunity to qualify for the full value of the reward. Plans must give participants an opportunity at least once every twelve months to meet an alternative standard—whenever that occurs during the plan year—and receive the *same full reward* as those who meet the initial standard (i.e., non-smokers). Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard ***for that plan year***." (emphasis added)). Employers have flexibility with regards to ***access*** to the alternative standard. They can, for example, provide access once a year (assuming the window complies with the reasonableness requirements), for three months, four months, or throughout the plan year. What they cannot do is reduce the ***value*** of the reward for participants based on when they satisfy the standard.

27.     The Departments have made clear that every participant must receive "the *same*, *full reward*" for satisfying the reasonable alternative standard, even if the individual completes that standard midyear.[6] A compliant plan must therefore make the reward available retroactively

---

[6] "The intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." Final Regulations, 33165 (emphases added); *see id.*, 33163 ("While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***.").

or otherwise ensure that the value of the reward is identical for all similarly situated participants. Failure to do so violates ERISA's nondiscrimination rules.

28.     For health contingent wellness programs, the DOL Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The Departments explained that while materials that merely "mention" a program, without describing its terms, need not include the notice, any plan materials that reference a *premium differential based on tobacco use* or other health-contingent standard **must** contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials, benefit guides, or SPDs that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice—including omitting contact information and a statement that a participant's physician's recommendations will be accommodated—violate this rule.

29.     These requirements exist precisely to prevent employers from including these disclosures in some plan materials but then excluding that information from materials that are actually sent to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

30.     Defendants impose a premium differential without providing the required notice disclosures, specifically, the physician-accommodation statement, in *any* of the communications they send to participants, failing to notify participants of all the avenues available to them to avoid the surcharge.

31.     Defendants' tobacco surcharge is unlawful because it imposes a premium differential without providing the required disclosure in *all* Plan materials describing the surcharge and because it fails to deliver the "full reward" required under ERISA's wellness-program regulations. None of the program communications prior to 2025 inform participants that their personal physician's recommendations will be accommodated or that the "full reward" is provided to all those who satisfy an alternative standard. Instead, participants who begin after the Plan's arbitrary March 31 deadline or who successfully quit after the December 15 deadline, receive only *partial* value, if any—contrary to the *full reward rule* requiring that once a participant satisfies a reasonable alternative standard, the entire premium differential for the plan year must be provided. 42 U.S.C. § 300gg-4(j)(3)(D). As discussed, the Final Regulations permit outcome-based wellness programs, such as tobacco-cessation initiatives, only when *every* regulatory requirement is satisfied, including the *full reward* and required notice disclosures in all Plan communications. *See* 29 C.F.R. § 2590.702(f)(4). Because Defendants' program meets neither, it is not a compliant wellness program under ERISA

## II.     DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

32.     Defendants' tobacco surcharge is unlawful and discriminatory because it fails to comply with the Final Regulations governing tobacco surcharges and wellness programs. To qualify for ERISA's safe harbor under 29 U.S.C. § 1182(b)(2)(B), a wellness program must clearly

14

disclose a reasonable alternative standard that guarantees that every "similarly situated individual" who satisfies an alternative standard receive "the same, full reward," and it must provide meaningful notice in *all* plan materials discussing the premium differential, including a statement that participants' personal physicians' recommendations will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v). Defendants' Plan fails each of these requirements.

33.     Defendants' program violates the full reward rule because it conditions reimbursement on when during the Plan year a participant enrolls and when he or she can report completion to HR. Under the Plan, smokers must not only enroll in an approved tobacco cessation program by March 31 but also complete the program by December 15 of the same Plan year. If a participant fails to enroll in the program by March 31, they are unable to qualify for non-smoker rates for the entire year. This arbitrary temporal window is not only unreasonable, it creates a scenario whereby similarly situated individuals can receive a different *value* based on when during the Plan year he or she completes the alternative standard. That violates the full reward rule and Defendants should not have conditioned the *value* of what participants receive on the time they enroll or complete the program during the Plan year. As the 2024 SPD states:

> You may be eligible for a non-smoker discount under the medical plan. To be eligible, you must not have used tobacco products during the previous six (6) months and you must not intend to use tobacco products in the future …

> If you are a smoker you will be charged smoker rates. If your spouse or domestic partner is a smoker, and you elect coverage for him or her under the medical plan, you will be charged smoker rates. If you add your spouse or domestic partner to your medical coverage and he or she is a smoker, you will be charged smoker rates effective on the date you add him or her to your medical coverage.

> If you or your spouse or domestic partner change from smoker to non-smoker status, each of you must complete an affidavit before the change can be implemented.

If you are a smoker, you may still receive the non-smoker discount if you complete the approved UHC or BCBS tobacco cessation program, provide program completion documentation from UHC or BCBS and provide a completed Reasonable Alternative Certification Form to the ESU. The UHC or BCBS tobacco cessation program must start by March 31st of the plan year and you must complete the program by December 15th of the plan year. All documentation must be submitted to the ESU within 31 days of completing the program (but in no case later than December 15th) and must be approved by the ESU. You will then be charged non-smoker medical rates for the remainder of the plan year. Keep in mind that your spouse or domestic partner must be a non-smoker as well, or must also start an approved UHC or BCBS tobacco cessation program by March 31st, complete the program by December 15th and submit the required documentation by the deadline for you to receive non-smoker medical rates. The UHC and BCBS smoking cessation programs are deemed approved tobacco cessation programs.

You will also receive a refund of the difference in cost between the smoker and non-smoker premiums that you paid retroactive to January 1. This refund is taxable income to you. Refunds must be processed in the same plan year. For that reason, if you complete an approved tobacco cessation program in November or December, you must submit all documentation to the ESU by December 15th to be eligible for a premium refund. You may not receive a premium refund for documentation submitted after December 15th.

34.     Further, Defendants impose smoker rates for health insurance on employees and their covered spouses unless they affirmatively complete a "tobacco-free affidavit" or enroll in a smoking cessation program. Travelers conditions removal of the surcharge on completion of the smoking cessation program and on the submission of a nicotine declaration, but only if *both* the employee and spouse complete the program and submit declarations, even when the employee does not use nicotine. If either the spouse or employee do not complete the smoking cessation program, the employee cannot receive the "full reward" that non-smokers received.  Travelers should not have conditioned the participant's "full reward" on the dependent's completion of the smoking cessation program because it creates a scenario whereby participants can complete the

16

smoking cessation program and not receive the "full reward" if their dependent does not complete the program. ERISA does not permit an employer to condition a participant's reward on the health status, behavior, or program compliance of any other person, nor to require dependents to participate in a health-contingent wellness program.[7] The reasonable alternative standard must be made available to *the individual*, and Travelers dependent-contingent structure violates ERISA's anti-discrimination rules and renders the surcharge unlawful.

35.     Further, Defendants failed to provide proper notice. ERISA requires that employers clearly communicate the availability of reasonable alternative standards, contact information, and the physician-accommodation statement in all Plan materials discussing the surcharge. 45 C.F.R. § 146.121(f)(4)(v). Defendants' materials failed, prior to 2025, to provide this notice. Specifically, the documents that inform participants of the surcharge fail to provide the physician-accommodation statement.

36.     Defendant should have included clear and complete notice disclosures in all Plan materials discussing the surcharge or premium differential. Had Travelers included the required disclosures, participants like Plaintiff could have taken steps to avoid the surcharge by including her physician in the process of developing an alternative standard. Defendants should have

---

[7] *See* 29 U.S.C. § 1182(b)(1) ("A group health plan … may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual **or to an individual enrolled under the plan as a dependent of the individual**." (emphasis added)); 42 U.S.C. § 300gg-4(b)(1). The statue further requires that the reasonable alternative standard be made available to "an individual." 42 U.S.C. § 300gg-4(j)(3) ("If any of the conditions for obtaining a premium discount, rebate, or reward under a wellness program … is based on **an individual** satisfying a standard that is related to a health status factor, the wellness program shall not violate this section if the following requirements are complied with:" (emphasis added)). Nothing in the statute or Final Regulations authorizes an employer to force spouses or dependents—who may have no health factor at issue—to complete a cessation program as a condition of the employee avoiding a surcharge.

included a statement that the Plan would accommodate the recommendations of the participants' personal physicians in designing an alternative standard. In other words, Travelers should have told participants of *all* the avenues they could take to avoid the surcharge, but it opted not to.

37.     Allowing entities like Defendants to exploit their participants and unlawfully extract tens of thousands of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Defendants failed to administer the Plan solely in the interest of participants.

### III.     DEFENDANTS ADMIT THAT THEY FAILED TO MONITOR, UPDATE, OR OVERSEE PLAN MATERIALS TO ENSURE COMPLIANCE.

38.     ERISA imposes non-delegable fiduciary obligations on plan fiduciaries—including the TAC—to ensure that all Plan materials, disclosures, and participant-facing communications comply with federal law. These duties include monitoring the Plan's operations, reviewing Plan communications, updating documents to ensure compliance, and overseeing the design and administration of any wellness program tied to a premium differential. Defendants' own discovery responses confirm that these core fiduciary duties were neglected for years.

39.     When asked directly whether the TAC conducted any audit, review, or compliance check to determine whether Plan materials complied with ERISA's mandatory requirements, Defendants admitted that the TAC did not perform any audit or review. This lapse occurred over years and reflects a wholesale abdication of the TAC's statutory responsibilities. When asked to

18

identify the individuals or committees responsible for designing, implementing, amending, administering, or overseeing the tobacco surcharge and associated wellness program from January 2013 to the present, Defendants did not identify the TAC at all. Instead, Defendants pointed solely to (i) Travelers' Chief Human Resources Officer and (ii) the Plan's third-party vendor. The omission of the TAC from this list confirms that the very fiduciary charged with administering the Plan and ensuring compliance with ERISA played no role in developing, reviewing, or supervising the program at issue, even though Plan administration and compliance fall squarely within its statutory mandate.

40.     Defendants' inability to identify any TAC-level oversight became even more apparent when asked to describe the process by which the terms of the tobacco surcharge or wellness program are audited, evaluated, or reviewed, including the frequency, scope, or criteria for such reviews. Defendants again named only non-fiduciaries and outside counsel and still did not identify the TAC or describe any structured review process whatsoever for the tobacco surcharge wellness program. This response is consistent with the record: the disclosures that were sent to participants, including the SPD and enrollment materials, omitted the physician-accommodation statement entirely, and no fiduciary ever reviewed these documents to confirm compliance. Defendants' responses reveal not merely imperfect compliance but the total absence of any fiduciary review architecture required under ERISA's duty of prudence.

41.     Taken together, Defendants' own admissions establish that the TAC—despite being the Plan's named fiduciary and Administrator—did not audit the surcharge program, did not review Plan materials for compliance with ERISA's wellness program rules, did not monitor third-party vendors, did not amend non-compliant documents, and did not oversee the tobacco surcharge

19

wellness program in any meaningful way. In short, the TAC ignored ERISA's most basic fiduciary requirements.

42.     Without any oversight from the TAC, the Plan's SPD, enrollment guides, and other participant-facing materials repeatedly omitted the mandatory disclosure that participants' personal physicians' recommendations would be accommodated. Likewise, the surcharge program was administered through arbitrary deadlines that resulted in the denial of "the same, full reward" to similarly situated participants, despite the Departments' clear instruction that the full reward protect the value of what participants receive by ensuring participants who satisfy a reasonable alternative standard, regardless of timing, receive the same value as non-smokers. Defendants' admissions confirm that these unlawful practices persisted for years because the TAC simply failed to do its job. These failures were the direct and proximate cause of the unlawful imposition of tobacco surcharges on participants who were never informed of their ERISA-protected rights and were denied an unobstructed opportunity to obtain the full reward through a compliant reasonable alternative standard.

## IV.     DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

43.     Defendants administered the tobacco surcharge by designating which participants are charged and withholding the surcharge directly from participants' paychecks as a before-tax plan contribution, alongside required premium deductions. These deductions are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

44.     The governing Plan documents make clear that medical coverage is funded by both employer and participant contributions. Travelers commits a defined company contribution

amount toward the cost of coverage, with participants paying the balance. The surcharge deductions became Plan assets at the moment they were withheld from participants' pay. Under 29 C.F.R. § 2510.3-102(a), participant contributions to an ERISA plan, including amounts withheld from wages for the purpose of paying plan premiums, are Plan assets as soon as they are 'segregated from the employer's general assets' or 'can reasonably be segregated,' which occurs no later than the date the employer withholds them from wages. By integrating the tobacco surcharge into participant contributions, Defendants created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Travelers' promised company contribution amount, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, Defendant used the premium differential to lower its own contributions to the Plan. Because the cost of coverage for each participant is fixed, every dollar of surcharge collected reduced Travelers' company contribution dollar-for-dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from Travelers and onto participants.

45.     This practice constitutes classic self-dealing because Defendant manipulated the Plan's funding structure to realize savings for itself, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendants' actions caused the Plan to lose portions of the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

46.     In doing so, Defendants failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-smokers, Defendants capitalized on the additional premium payments to save money for itself. The money that Travelers did not have to contribute to the Plan sat in its accounts

21

and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Travelers. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406

## CLASS DEFINITION AND ALLEGATIONS

47. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

48. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Tobacco Use Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

49. Excluded from the Class are Defendants, any parent entities, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

50. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

51. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1).

52. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains hundreds of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

53.     **Commonality**. This action involves questions of law and fact common to the Class.

The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants' premium differential for tobacco use discriminates against participants based on a health factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendants notified participants in all Plan materials of the avenues by which participants could avoid the wellness penalty for tobacco use and obtain the "full reward";

d. Whether Defendants notified participants in all Plan materials of the fact that their personal physician's recommendations would be accommodated;

e. Whether Defendants' wellness penalty for tobacco use violates ERISA and the applicable regulations.

f. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

g. Whether Defendants breached their fiduciary duties by failing to periodically review Plan communications to ensure compliance with ERISA and applicable regulations;

h. Whether Travelers breached its fiduciary duty by failing to properly monitor and overlook the activities of the TAC to ensure compliance with ERISA and the applicable regulations

i. The appropriate mechanisms to determine damages on a class-wide basis.

54.     **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful wellness penalty for tobacco use. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff's are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

23

55.     **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed an unfair and discriminatory wellness penalty for tobacco use. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

56.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

57.     Plaintiff on behalf of herself and the Class seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class. Unless the Class is certified, Defendants will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are

24

issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

**CAUSES OF ACTION**

**COUNT I**
**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

58.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–57 of this Complaint.

59.     Defendants improperly impose a wellness penalty for tobacco use on all participants who use tobacco in violation of ERISA § 702. By imposing a discriminatory wellness penalty for tobacco use on participants (and their dependents) who use tobacco, and by withholding wellness incentives from those participants, Defendants is charging some participants more than others based on a health status-related factor, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b). This discrimination stems from Defendants' decision not to provide a reasonable alternative standard that ensures that all similarly situated participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

60.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual *or to an individual enrolled under the plan as a dependent of the individual*" *See* 29 U.S.C. § 1182(b)(1) (emphasis added). Defendants' Plan violates this prohibition because it fails to provide a *reasonable* alternative standard ensuring that participants who satisfy an alternative standard

25

receive the full reward, as required by 29 C.F.R. § 2590.702(f)(4)(iv). Because Defendants imposed an arbitrary barrier and restriction that compromises the *value* of what participants who satisfy an alternative standard receive, they violation the full reward rule.

61.    Further, participants who completed the designated cessation program were only eligible for the full reward if their dependents completed the program as well, contrary to ERISA's rule mandating that the "full reward" be made available to "all similarly situated individuals." It is unreasonable to condition a employee's ability to avoid or recover the surcharge on a spouse's or dependent's completion of an alternative standard—particularly where the employee may not use nicotine—because ERISA requires that the full reward be available based solely on the participant's own completion of the alternative standard. Because not all "similarly situated individuals" could receive the full reward for the entire plan year upon completion of an alternative standard, Defendants' tobacco surcharge program fails to meet the requirements of 29 U.S.C. § 1182(b)(2)(B) and 29 C.F.R. § 2590.702(f).

62.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

63.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II

**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-**
**4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

64.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–57 of this Complaint.

65.     To enroll in the Defendants' Plan, Plaintiff and all those similarly situated were required to pay smoker rates in an undisclosed amount each pay period and each year. Defendants' tobacco surcharge program was not a permissible wellness program because it failed to provide proper notice of the availability of a reasonable alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

66.     Defendants' Plan materials failed to include the required disclosure in any Plan materials distributed to participants, including a statement that recommendations of an individual's personal physician would be accommodated in determining a reasonable alternative standard. Because core, participant-facing documents describing the program and the premium differential, including the SPD, omitted the mandatory disclosures, the tobacco surcharge program fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection.

67.     Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

68.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans *must* comply with

to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

69.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–57 of this Complaint.

70.     At all relevant times, Defendants were administrators of the Plan and were fiduciaries in that they exercised discretionary authority and control over the management of the Plan's assets.

71.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

72.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to exclusively benefit Travelers, to the detriment of the Plan and its participants, by unlawfully charging tobacco users millions in additional premium payments, taking those funds from participants' paychecks, and using them to offset Travelers own obligations to contribute to the Plan. These surcharges were collected as before-tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection.

28

Defendants breached their fiduciary duties by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce Travelers own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Travelers' contribution amount, and (3) the surcharge itself. But Defendants used the surcharge amounts to displace Travelers' own contributions. Upon information and belief, Travelers further profited by retaining the amounts it did not have to contribute in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

73.     Year after year, Defendants administered the Plan within the meaning of 29 U.S.C. § 1002(16) and were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21), in that they exercised discretionary authority and discretionary control respecting the management and administration of the Plan and the surcharge program, including the decision not to offer a compliant wellness program. Defendants exercised discretionary authority by deciding how surcharge proceeds were handled. Defendants also controlled whether participants would receive the "full reward" of avoiding the surcharge for the Plan year and failed to administer notices or alternatives required by ERISA's implementing regulations.

74.     The TAC controlled and disseminated Plan Communications including, enrollment guides, tobacco surcharge letters, and other materials describing the premium differential but failed to include notice to all participants' to have their physicians' recommendations accommodated. The TAC also failed to conduct periodic, prudent reviews of the wellness program and related communications to ensure compliance with ERISA. Instead, it allowed a structurally defective program—one that imposed timing-based reimbursement limits, denied retroactive relief, and

29

excluded similarly situated individuals from the full reward—to persist year after year, despite its discriminatory effect and clear inconsistency with the full reward rule.

75.     The TAC further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce Travelers' own contribution obligations and by maintaining a program that withheld full reimbursement from all participants who completed the reasonable alternative standard. It also failed to notify participants of their rights under the Final Regulations or to ensure that Plan documents contained the disclosures required by 29 C.F.R. § 2590.702(f)(4)(v). These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

76.     ERISA also imposes on appointing fiduciaries (i.e., Travelers) the duty to monitor and supervise the actions of those administering the Plan (i.e., the TAC). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full reward requirements, Travelers breached its duty to monitor. Travelers failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

77.     As a result of these breaches, Travelers was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program, the TAC secured financial savings for the employer while shifting costs to participants. The structure of the program ensured that not all "similarly situated individuals" could receive the full reward, and participants were deprived of clear notice

30

of the reasonable alternative standard. In effect, Defendants converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

78.    By withholding unlawful surcharges and using those funds to offset Travelers' financial obligations, the TAC caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-interest—namely, Travelers—in violation of 29 U.S.C. § 1106(a)(1). Travelers is a party-in-interest under 29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

79.    By using the tobacco surcharge amounts to its own benefit, Travelers increased its corporate assets and reduced the funds it was otherwise obligated to contribute to the Plan. Such conduct constitutes self-dealing prohibited by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). The surcharges should have supplemented, not displaced, employer contributions. Instead, the TAC's actions deprived participants of the full reward and used participant-paid Plan assets to subsidize Travelers' costs, leaving the Plan underfunded relative to what it should have received

80.    Defendants breached their fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to *all* similarly situated participants; failing to disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to review the terms of the tobacco surcharge and the communications sent to participants to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Travelers. Had Defendants complied with their

31

fiduciary duties, they would have noticed the deficiencies and taken steps to correct what was occurring.

81.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

82.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendants are liable to: make good to the Plan all losses resulting from their breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## COUNT IV

### BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
### (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)

83.     Plaintiff re-alleges and incorporates by reference allegations 1–57 of this Complaint.

84.     At all relevant times, Defendants were the administrators of the Plan and acted as fiduciaries because they exercised discretionary authority and control over the administration of the Plan, the imposition and handling of tobacco surcharges, and the content of the communications provided to participants and their dependents.

85.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye

32

single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

86.     Defendants breached these duties by administering a surcharge program that violated ERISA's nondiscrimination requirements, by failing to offer or operate a compliant reasonable alternative standard for employees or dependents, by failing to review the terms of the surcharge and the Plan communications, even periodically, to ensure compliance, and by structuring the tobacco surcharge in a manner that shifted costs to participants while reducing Travelers' own financial obligations to the Plan. Defendants exercised discretionary authority over how surcharge proceeds were handled, whether individuals would ever receive the full reward, and what information was communicated to participants about their rights under the Plan.

87.     Defendants admit that the TAC conducted no audits to ensure that Plan materials complied with ERISA's notice requirements, and Defendants further failed to identify the TAC as having any role in designing, implementing, administering, overseeing, auditing, evaluating, reviewing, or communicating the terms of the tobacco surcharge or associated wellness programs at any time since January 2013. Defendants abdicated their core fiduciary duties to oversee, audit, amend, and properly administer the Plan, and this failure was the proximate cause of Defendants' unlawful imposition of the tobacco surcharge on Plan participants.

88.     Defendants further breached their fiduciary duties by operating a surcharge program that was not "reasonably designed" to promote health but instead functioned as a cost-shifting mechanism. Defendants imposed surcharges on employees and on those whose dependents used tobacco, while offering an incomplete reasonable alternative standard that failed to notify participants of their right to submit the recommendations of their personal physician. Defendants acted disloyally by using these participant-funded surcharges to offset contributions

33

the employer was obligated to make, thereby benefiting the company at the expense of Plan participants.

89.    As a result of Defendants' conduct, participants and dependents were left with increased premiums, diminished benefits, and no compliant wellness program to avoid the surcharges.

90.    Defendants therefore breached their fiduciary duties by: (i) administering a surcharge program that did not conform to ERISA's nondiscrimination requirements; (ii) failing to disclose material information, including the existence and terms of any alternative standard and the contact information for accessing alternative standards; (iii) acting in their own interest by retaining participant-funded surcharges; and (iv) failing to review the surcharge program, Plan documents, SPD, and communications to ensure ERISA notice disclosure compliance. These breaches caused Plaintiff and the Class to incur unlawful surcharges and shifted substantial costs from Travelers to participants.

91.    As a direct and proximate result of these fiduciary breaches, Plaintiff and Class Members lost millions of dollars in the form of unlawful surcharges deducted from their paychecks and were deprived of Plan benefits to which they were legally entitled.

92.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek all appropriate equitable relief necessary to redress Traveler's fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, reformation, a constructive trust over improperly retained funds, and declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

34

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory wellness penalty for tobacco use imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory wellness penalty for tobacco use within the applicable limitations period;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following terms of the Plan that violated ERISA's anti-discrimination provisions and for failing to adequately monitor and review the terms of the Plan to ensure they complied with ERISA;

E. An Order requiring Defendants to provide an accounting of all prior payments of the wellness penalty for tobacco use under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants collected as unlawful surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory wellness penalty for tobacco use;

J.  Relief to the Plan from Defendants for its violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharge is unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory wellness penalties on participants in the future.

K.  Relief to the Plaintiff and all those similarly situated for its violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharge is unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plaintiff and all similarly-situated Participants of the amounts owed to Participants who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory wellness penalties on participants in the future.

L.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

M.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

N.  Any other relief the Court determines is just and proper.

Dated: December 12, 2025                    Respectfully submitted,


                                            **LOCAL COUNSEL**


                                            /s/ *Oren Faircloth*
                                            _____

                                            **SIRI & GLIMSTAD LLP**
                                            Oren Faircloth (*pro hac vice*)
                                            Willian H. Payne (*pro hac vice* to be submitted)
                                            745 Fifth Avenue, Suite 500
                                            New York, New York 10151
                                            Tel: (212) 532-1091
                                            E: ofaircloth@sirillp.com
                                            E: wpayne@sirillp.com

                                            **CHESTNUT CAMBRONNE PA**
                                            Philip J. Krzeski
                                            100 Washington Ave., Ste. 1700
                                            Minneapolis, MN 55401
                                            Tel: (612) 339-7300
                                            E: pkrzeski@chestnutcambronne.com


                                            *Attorneys for Plaintiff and the Proposed Class*